1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9       FOR THE EASTERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  N.P. DOE, an individual, | No. 2:25-cv-00264-DJC-CSK |
| 12          Plaintiff, | |
| 13       v. | ORDER |
| 14  COUNTY OF PLUMAS; BRANDON COMPTON, in his individual and official capacities; and DOES 1 through 20, inclusive, | |
| 15 | |
| 16 | |
| 17          Defendants. | |

18

19       Plaintiff, a former inmate, alleges she was sexually assaulted numerous times by

20  a correctional officer during her incarceration from 2015 to 2017 as well as

21  immediately after her release.  Plaintiff alleges the correctional officer made threats to

22  keep her from reporting the assaults and also alleges that, when she reported the

23  assaults, the county inadequately investigated her claims.  Plaintiff now brings state

24  and federal claims stemming from the sexual assaults.  Defendants have moved to

25  dismiss Plaintiff's claims, arguing her federal claims under 42 U.S.C. § 1983 are

26  untimely, and her remaining state law and federal claims are largely inadequately

27  pled.  Having considered the Parties' briefings and arguments, the Court will grant

28  Defendants' motions and dismiss Plaintiff's claims in full.

1

1

**BACKGROUND**

2        Plaintiff N.P. Doe alleges she was an inmate in the Plumas County Jail ("Jail")

3  from about 2015 through December 2017. (First Am. Compl. ("FAC") (ECF No. 4)

4  ¶ 26.) During that time, Plaintiff alleges that Defendant Brandon Compton, who was

5  employed as a correctional officer by Defendant the County of Plumas ("County"),

6  repeatedly sexually assaulted her. (*Id.* ¶¶ 6–7, 27.) For example, in or about 2015,

7  Defendant Compton told Plaintiff to expose her breast to him, which she did. (*Id.*

8  ¶ 28.) During a second incident, Defendant Compton took Plaintiff to a holding cell

9  without cameras and forced her orally copulate him. (*Id.* ¶ 29.) During a third

10  incident, Defendant Compton ordered Plaintiff to lay down in the bed and play with

11  herself, after which Plaintiff orally copulated Defendant Compton through the food

12  slot of the cell. (*Id.* ¶ 30.) During a fourth incident, in or about late 2017, Defendant

13  Compton digitally penetrated Plaintiff through the food slot. (*Id.* ¶ 31.) Finally, on

14  four occasions during Plaintiff's incarceration, Defendant Compton woke her during

15  the night in order to have sexual intercourse with him and forced her to swallow his

16  ejaculation. (*Id.* ¶ 32.)

17        Plaintiff alleges that Defendant Compton warned her not to say anything about

18  the assaults because "they won't believe you." (*Id.* ¶ 33.) Plaintiff also alleges that, at

19  some point during her incarceration, Defendant Compton called Plaintiff "out of her

20  cell and told her she had a call, from Plumas County or Butte County probation." (*Id.*

21  ¶ 34.) However, Plaintiff "discovered there was no one on the phone for her." (*Id.*)

22  Instead, Defendant Compton took Plaintiff into an intake room and gave her a little

23  bag of chewing tobacco which he then used to threaten her into silence by telling her

24  that if she got caught with the chew it would be a federal offense. (*Id.* ¶¶ 34, 36.)

25        Plaintiff alleges that, the day she was released from the Jail, Defendant

26  Compton was waiting for her and ordered her to meet him at a nearby park in

27  exchange for $100. (*Id.* ¶ 35.) At the park, Defendant Compton ordered Plaintiff into

28  the back seat of his car, after which he drove her to his father's trailer. (*Id.*) At the

1   trailer, Defendant Compton took Plaintiff into a back room and had forcible sexual

2   intercourse with her. (*Id.*)  Defendant Compton gave Plaintiff $20 and threatened her

3   not to report the incident. (*Id.*)

4          Plaintiff alleges that she "learned and believed" the Plumas County Sheriff's

5   Office ("Sheriff's Office") would retaliate against inmates who complained. (*Id.* ¶ 36.)

6   Accordingly, Plaintiff feared retaliation both during her incarceration and afterwards.

7   (*Id.*) Despite this, Plaintiff alleges that she attempted to report the assaults, and did

8   report the assaults to law enforcement in a neighboring county. (*Id.* ¶ 37.) Plaintiff

9   believes that agency reported the assaults to the County. (*Id.*)  However, no one from

10  the Sheriff's Office contacted her to investigate her claims. (*Id.*)

11         In 2019, Officer Goodson, a female correctional officer at the Jail, sued

12  Defendant Compton and the County alleging that Defendant Compton had sexually

13  harassed and assaulted her. (*Id.* ¶ 51.) Plaintiff, along with several other former

14  female inmates, provided sworn statements in the case detailing the sexual

15  harassment they endured from Defendant Compton. (*Id.* ¶¶ 51, 53.) Plaintiff alleges

16  her statement was provided to the Sheriff's Office, but that no one ever contacted her

17  to investigate her claims. (*Id.* ¶ 53.) Plaintiff also alleges that the County retaliated

18  against Officer Goodson for bringing suit by firing her. (*Id.* ¶ 52.)

19         Plaintiff alleges that in or about 2019, briefly after she provided her sworn

20  statement, the Sheriff's Office arrested her and transported her to the Jail. (*Id.* ¶ 54.)

21  While at the Jail, a Correctional Sergeant suggested Plaintiff and the other former

22  inmates should have reported the sexual assault by Defendant Compton back when it

23  occurred. (*Id.*)  Plaintiff alleges she was in extreme fear during and after being

24  released from custody and has suffered extreme emotional distress and physical

25  symptoms as a result of Defendant Compton's assaults. (*Id.* ¶¶ 54, 70.)

26         Plaintiff filed this action on January 20, 2025, bringing ten causes of action in

27  her operative First Amended Complaint under federal question and supplemental

28  jurisdiction for (1) violations of the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ.

1  Code § 52.1, *et seq.* (against Defendant Compton and the County) ; (2) Sexual

2  Assault/Sexual Battery under Cal. Civ. Code §1708.5 (against Defendant Compton

3  and the County); (3) Sexual Harassment under Cal. Civ. Code § 51.9 (against

4  Defendant Compton and the County); (4) Gender Violence under Cal. Civ. Code

5  § 52.4 (against Defendant Compton and the County); (5) Cruel and Unusual

6  Punishment/Excessive Force under 42 U.S.C. § 1983 (against Defendant Compton

7  and the County); (6) Failure to Protect under 42 U.S.C. § 1983 (against Defendant

8  Compton and the County); (7) Due Process/Bodily Integrity under 42 U.S.C. § 1983

9  (against Defendant Compton and the County); (8) Equal Protection under 42 U.S.C.

10  § 1983 (against Defendant Compton and the County); (9) Sex Trafficking under 18

11  U.S.C. §§ 1591, 1594(a) (against Defendant Compton and the County); and

12  (10) Forced Labor under 18 U.S.C. § 1589 (against Defendant Compton and the

13  County).  (*Id.* ¶¶ 1–2, 72–176.)  The County and Defendant Compton moved to dismiss

14  Plaintiff's claims on May 27, 2025.  (County Mot. Dismiss (ECF No. 16); Compton Mot.

15  Dismiss (ECF No. 17).)  The matter was submitted without oral argument on August

16  14, 2025, pursuant to Local Rule 230(g).  (ECF No. 25.)

17                              **LEGAL STANDARD**

18          A party may move to dismiss for "failure to state a claim upon which relief can

19  be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint

20  lacks a "cognizable legal theory or sufficient facts to support a cognizable legal

21  theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

22  The court assumes all factual allegations are true and construes "them in the light

23  most favorable to the nonmoving party."  *Steinle v. City & Cnty. of San Francisco*, 919

24  F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d

25  1480, 1484 (9th Cir. 1995)).  That said, if the complaint's allegations do not "plausibly

26  give rise to an entitlement to relief" the motion must be granted.  *Ashcroft v. Iqbal*, 556

27  U.S. 662, 679 (2009).  A complaint need contain only a "short and plain statement of

28  the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not

1   "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2   However, this rule demands more than unadorned accusations; "sufficient factual

3   matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same

4   vein, conclusory or formulaic recitations of elements alone do not suffice. *Id.* "A claim

5   has facial plausibility when the plaintiff pleads factual content that allows the court to

6   draw the reasonable inference that the defendant is liable for the misconduct

7   alleged." *Id.*

8          In granting a motion to dismiss, a court must also decide whether to grant leave

9   to amend. Leave to amend should be freely given where there is no "undue delay,

10  bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the

11  opposing party by virtue of allowance of the amendment, [or] futility of amendment

12  . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*,

13  316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal without leave to amend is proper only

14  if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex*

15  *Techs., Inc. v. Crest Grp., Inc.*, 499 F. 3d 1048, 1056 (9th Cir. 2007) (quoting *In re Daou*

16  *Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

17                                      **ANALYSIS**

18  **I.    Plaintiff's Fifth Through Eighth Causes of Action under 42 U.S.C. § 1983**

19  **      are Untimely**

20         Plaintiff brings four causes of action under 42 U.S.C. § 1983 arising out of her

21  sexual assault by Defendant Compton while in detention. (*See* FAC ¶¶ 107–50.) As a

22  threshold matter, the County and Defendant Compton contend that none of these

23  claims are timely as they are all brought well outside the two-year statute of limitations

24  for section 1983 claims and are not saved by either tolling or estoppel. (County Mot.

25  Dismiss at 5–11; Compton Mot. Dismiss at 9–14).

26         The Court finds that these claims are time-barred. "It is well-established that

27  claims brought under [section] 1983 borrow the forum state's statute of limitations for

28  personal injury claims, and in California, that limitations period is two years." *Action*

1  *Apartment Ass'n v. Santa Monica Rent Control Op. Bd.*, 509 F.3d 1020, 1026 (9th Cir.

2  2007) (citations omitted); *see also* Cal. Code Civ. Proc. § 335.1 (establishing a two-

3  year statute of limitations for personal injury actions).  When a section 1983 claim

4  accrues is "a matter of federal law, 'governed by federal rules conforming in general

5  to common-law tort principles.'"  *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883,

6  887 (9th Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  Accrual of

7  section 1983 claims is thus typically dictated by the "discovery rule" which determines

8  a claim has accrued "when the plaintiff knows or has reason to know of the injury that

9  is the basis of the action and the cause of that injury." *Id.*  Generally, the applicable

10  statute of limitations starts to run upon accrual of the plaintiff's claim.  *See Douglas v.*

11  *Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009).

12        Here, the Court finds that Plaintiff's claims accrued at the latest in 2017, when

13  the last incident of sexual assault occurred, as Plaintiff was clearly aware of the assaults

14  Defendant Compton allegedly committed.  Plaintiff argues that, despite this accrual

15  date, at least her Equal Protection claim is timely under the continuing violations

16  doctrine because "the FAC plainly alleges a persistent pattern of the County failing to

17  prevent or investigate sexual assaults committed by Compton against female inmates,

18  including Plaintiff" and the "harm to Plaintiff arises not only from the sexual assaults

19  themselves, but also from the County's continuing failure to investigate and provide

20  institutional remedies."  (Opp'n County Mot. Dismiss (ECF No. 20) at 4–5.)  "The

21  continuing violations doctrine functions as an exception to the discovery rule of

22  accrual 'allowing a plaintiff to seek relief for events outside of the limitations period.'"

23  *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (quoting *Knox v. Davis*,

24  260 F.3d 1009, 1013 (9th Cir. 2001)).  Historically, the Ninth Circuit recognized two

25  applications of the continuing violations doctrine: (1) to "a series of related acts, one

26  or more of which falls within the limitations period" (known as the serial acts branch),

27  and (2) to "the maintenance of a discriminatory system both before and during [the

28

6

1   limitations] period" (known as the systematic branch). *Bird*, 935 F.3d at 746 (quoting

2   *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997)) (bracketing in original).

3   However, the Supreme Court severely limited the continuing violations doctrine

4   in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Therein,

5   the court held that "'discrete . . . acts are not actionable if time barred, even when they

6   are related to acts alleged in timely filed charges' because '[e]ach discrete . . . act

7   starts a new clock for filing charges alleging that act.'" *Bird*, 935 F.3d at 747 (quoting

8   *Morgan*, 536 U.S. at 113); *see also Carpinteria Valley Farms, Ltd. v. Cnty. of Santa*

9   *Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) ("Although *Morgan* was a Title VII case . . .

10  we have applied *Morgan* to bar [section] 1983 claims predicated on discrete time-

11  barred acts, not-withstanding that those acts are related to timely-filed claims."). In

12  2019, the Ninth Circuit further observed that, "[a]lthough the Supreme Court in

13  [*Morgan*] addressed only the serial acts branch of the continuing violations doctrine

14  . . . we have applied [*Morgan*] to abrogate the systematic branch of the continuing

15  violations doctrine as well." *Bird*, 935 F.3d at 747 (citation omitted). Thus, under

16  *Morgan*, "little remains of the continuing violations doctrine" because:

> Except for a limited exception for hostile work environment claims–not at issue here–the serial acts branch is virtually nonexistent. Moreover, while we have left room for the systematic branch to apply to class-wide pattern-or-practice claims, . . . we have consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred.

22  *Id.* at 748. Here, Plaintiff has not demonstrated either narrow exception applies, as

23  she does not assert her pattern and practice claim on a class-wide basis. As such, the

24  continuing violations doctrine is inapplicable, and the discovery rule applies.

25  Applying the two-year statute of limitations, Plaintiff claims, which were brought

26  in 2025, are untimely absent tolling or estoppel.[1] When a federal court applies the

---

[1] The Court notes that California's longer statute of limitations for claims of sexual assault applicable to state law claims, *see* Cal. Gov't Code § 945.9; Cal. Code Civ. Proc. § 340.16, do not alter the two-year statute of limitations for section 1983 actions. *See Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d

1    forum state's statute of limitations, the court also applies the forum state's tolling rules.

2    *Soto v. Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018).  Thus, the Court borrows

3    California's statutory and equitable tolling and estoppel rules to the extent they are

4    not inconsistent with federal law.  *See Azer v. Connell*, 306 F.3d 930, 936 (9th Cir.

5    2002); *Jones v. Blanas*, 393 F.3d 918, 927–28 (9th Cir. 2004).

6         Here, Plaintiff argues her section 1983 claims are timely under equitable

7    estoppel, or estoppel by duress.  (Opp'n County Mot. Dismiss (ECF No. 20) at 5–11;

8    Opp'n Compton Mot. Dismiss (ECF No. 22) at 4–9.)  "[T]he doctrine of equitable

9    estoppel takes its life . . . from the equitable principle that no man will be permitted to

10   profit from his own wrongdoing in a court of justice."  *Doheny Park Terrace*

11   *Homeowners Ass'n, Inc. v. Truck Ins. Exch.*, 132 Cal. App. 4th 1076, 1089 (2005)

12   (quotations omitted).  Estoppel may be appropriate in the statute of limitations context

13   "where the defendant's act or omission actually and reasonably induced the plaintiff to

14   refrain from filing a timely suit."  *Doe v. Marten*, 49 Cal. App. 5th 1022, 1028 (2020).

15   Notably, California courts have found that "estoppel by duress" may apply in the

16   context of sexual abuse.  S*ee, e.g., John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d

17   438, 445–46 (1989).  Under that doctrine, a defendant will be estopped from raising a

18   statute of limitations defense if: (1) the defendant engages in "unconscionable acts"

19   such as threats, intimidation, coercion, or misrepresentations that deter the plaintiff

20   from filing a claim, and (2) the plaintiff establishes she filed the claim within a

21   reasonable time after the effects of the acts ended.  *Bianco v. Warner*, 562 F. Supp. 3d

22   526, 533 (C.D. Cal. 2021).

23

24   577, 579 (9th Cir. 2012) (Section 1983 plaintiff not entitled to Oregon's longer statute of limitations for
     childhood sexual response because "a state's residual personal injury statute of limitations, not a range

25   of specialized statutes of limitations, should be applied to [section] 1983 claims to prevent unnecessary
     litigation and preserve the efficacy of the [section] 1983 remedy") (citing *Wilson v. Garcia*, 471 U.S. 261,

26   272–73 (1985), *superseded by statute on other grounds as recognized by Jones v. R. R. Donnelley &
     Sons Co.*, 541 U.S. 369 (2004); *see also Owens v. Okure*, 488 U.S. 235, 249–50 (1989) (holding that

27   "where state law provides multiple statutes of limitations for personal injury actions, courts considering
     [section] 1983 claims should borrow the general or residual statute for personal injury actions").  Thus,

28   Plaintiff's section 1983 claims are subject to California's two-year statute of limitations for personal-
     injury claims.

1    Courts have recognized that a defendant's threats can "still hav[e] a deterrent

2    effect" long after a sexually abusive relationship ends.  *Doe v. Bakersfield City Sch.*

3    *Dist.*, 136 Cal. App. 4th 556, 572 (2006).  For example, in *Bianco*, an actress brought

4    an action against a recording artist for sexual assault and sexual battery alleging the

5    artist perpetrated physical, sexual, psychological, and emotional abuse against her

6    over a period of several years.  562 F. Supp. 3d at 534.  When she escaped, the artist

7    also threatened to have her visa revoked and to punish her.  *Id.*  The artist sought to

8    dismiss the plaintiff's claims, arguing that while the last incident had allegedly

9    occurred in 2013, plaintiff did not file her claims until 2021, making them untimely.  *Id.*

10    at 528, 531.  However, the court found that the artist was estopped from raising a

11    statute of limitations defense as the plaintiff had plausibly alleged the artist "engaged

12    in unconscionable acts that could have caused Plaintiff to refrain from instituting legal

13    proceedings against him."  *Id.* at 534.  In particular, the court reasoned that:

14    
15    
16    
17    
18    
19    
20    

> A reasonable jury could find that the effects of [the artist]'s
> alleged unconscionable acts, including the perceived threat
> to Plaintiff's safety, immigration status, and career, persisted
> years after her last contact with [the artist].  As a result of [the
> artist]'s abuse, Plaintiff also allegedly suffers from complex
> Post-Traumatic Stress Disorder, anxiety, depression, and
> panic attacks.  Given Plaintiff's post-abuse struggles, a jury
> could also find that Plaintiff filed suit within a reasonable time
> after the coercive effects of [the artist]'s unconscionable acts
> ended.

21    *Id.* (cleaned up).  Accordingly, the court declined to dismiss plaintiff's claims.  *Id.*

22    Plaintiff argues that she should similarly benefit from estoppel by duress

23    because she was sexually assaulted numerous times by Defendant Compton;

24    Defendant Compton threatened her against reporting the assault while she was

25    detained; once she was released from detention and reported Defendant Compton's

26    sexual assault, both to the neighboring county and in Officer Goodson's case, the

27    County never investigated or acted on her claims; the County retaliated against

28    Officer Goodson when she brought her case alleging assault; and Plaintiff was

1  arrested after providing a declaration in Officer Goodson's case and told she should

2  have reported the assault when it happened.  (Opp'n County Mot. Dismiss at 5–11;

3  Opp'n Compton Mot. Dismiss at 4–9.)

4        The Court disagrees.  While Defendant Compton's sexual assaults were

5  undoubtedly "unconscionable acts," Plaintiff has failed to plausibly plead that she filed

6  suit within a reasonable time after the deterrent effect of those acts ended.

7        First, while Plaintiff alleges that Defendant Compton threatened her not to

8  report the assaults, at most she alleges he warned her not to report the assaults

9  because "they won't believe you," and threatened that if Plaintiff was caught with

10  chewing tobacco in jail it would be a federal offense.  (FAC ¶¶ 33, 36).  Defendant

11  Compton's threats could not reasonably have had the same deterrent effect as those

12  alleged in *Bianco*, as they did not implicate Plaintiff's safety, immigration status, or any

13  other serious consequence.  While Defendant Compton implied Plaintiff could be

14  prosecuted for possessing the chewing tobacco in jail, Plaintiff was released in 2017,

15  at which time the effect of that threat would have been nullified.  Finally, Plaintiff

16  pleads that the last time she was actively harassed or threatened by Defendant

17  Compton was in 2017, eight years before she brought her claims.  (*Id.* ¶ 35.)

18        Second, Plaintiff alleges she reported the assaults to law enforcement in a

19  neighboring county and subsequently provided an affidavit in Officer Goodson's case

20  in 2019, but does not allege she experienced any retaliation or harassment from the

21  County or Defendant Compton as a result.  (*Id.* ¶¶ 37, 51–53.)  Despite having publicly

22  come forward with her claims twice, Plaintiff vaguely pleads that she could not file this

23  action until 2025 because she "believed the [Sheriff's Office] would retaliate against

24  inmates who complained," and believed she was in "grave danger" of being arrested

25  and prosecuted for the affidavit.  (*Id.* ¶¶ 36, 52–53.)  However, Plaintiff does not allege

26  why she formed these beliefs, or how she believed the Sheriff's Office would retaliate

27  if she reported the assaults.  Plaintiff alleges that the Sheriff's Office retaliated against

28  Officer Goodson by firing her when she filed her claims, but this form of retaliation

1   could not reasonably apply to Plaintiff as she was not employed by the County.

2   Further, while Plaintiff alleges she was arrested in 2019 shortly after providing her

3   affidavit in Officer Goodson's case, she does not allege any facts indicating her 2019

4   arrest was unlawful, had anything to do with her alleged sexual assaults, or was in

5   retaliation for her affidavit.  (*See id.* ¶ 54.)

6          Plaintiff's allegations here stand in marked contrast to those alleged in *M.S. Doe*

7   *v. County of Plumas*, No. 2:24-cv-02640, 2025 WL 2381815 (E.D. Cal. Aug. 15, 2025),

8   in which another former inmate brought similar allegations of sexual assault against

9   Defendant Compton.  Therein, the Court found that the plaintiff's section 1983 claims

10  were timely even though they had been brought more than 10 years after the alleged

11  assault because the plaintiff alleged Defendant Compton continued harassing her

12  well after her release from detention, including by threatening to call Child Protective

13  Services to have her children taken away, showing up to her family court hearings, and

14  harassing her at her workplace, the county animal shelter, to deter her from reporting

15  the sexual assault.  *Id.* at *6.  The plaintiff further alleged that she reported the assault

16  to her supervisor at the shelter, who in turn reported the assault to the county sheriff's

17  department, but that county inadequately investigated her claims and later retaliated

18  against her supervisor by firing and pursuing criminal charges against her.  *Id.* *2, 6.

19  Given these allegations, the Court found that plaintiff had plausibly alleged "both

20  Defendant Compton and the County engaged in 'unconscionable acts' which

21  deterred Plaintiff from pursuing her claims."  *Id.* at *6.  The Court further found that the

22  plaintiff's allegations were timely, even though she similarly filed an affidavit in Officer

23  Goodson's case in 2019, because she plausibly alleged she "she feared taking any

24  further action given Defendant Compton's previous threats, the County's prior

25  inadequate investigation of her claims, and the County's retaliation . . . until at least

26  2024 when she heard the news that Officer Goodson had won her case."  *Id.*  By

27  comparison, Plaintiff here has failed to allege any deterrent acts by Defendants as

28  severe or continuous as those alleged in *M.S. Doe*.

1    In short, Plaintiff has failed to allege sufficient details that would explain her

2    duress extending until 2025, including any further contact or actions by Defendant

3    Compton or the County after 2019.  Without more, the Court cannot find that Plaintiff

4    filed suit within a reasonable time.  Accordingly, the Court finds Plaintiff's Fifth through

5    Eighth Causes of Action under 42 U.S.C. § 1983 are untimely and will be dismissed

6    with leave to amend.

7    **II.    Plaintiff's Ninth and Tenth Causes of Action under the Trafficking Victims**

8    **Protection Act ("TVPA") are Inadequately Pled**

9    Defendants further argue that Plaintiff's causes of action under the Trafficking

10    Victims Protection Act ("TVPA") for Sex Trafficking and Forced Labor are inadequately

11    pled because Defendant Compton's alleged sexual assaults do not fall within the

12    scope of that act.  (County Mot. Dismiss at 20–24; Compton Mot. Dismiss at 16–20.)  In

13    particular, Defendants argue that Plaintiff has failed to allege any connection to

14    interstate commerce in support of her sex trafficking claim and has failed to allege she

15    was subjected to forced labor.  (*Id.*)

16    The Court agrees.  A violation of 18 U.S.C. § 1591(a) occurs when a person, "in

17    or affecting interstate or foreign commerce[,] . . . entices . . . or solicits by . . . force,

18    threats of force, fraud, coercion . . . or any combination [thereof] . . . [a] person to

19    engage in a commercial sex act."  Although courts have held "that any individual

20    instance of conduct regulated by the TVPA need only have a de minimis effect on

21    interstate commerce," *United States v. Walls*, 784 F.3d 543, 548–49 (9th Cir. 2015),

22    Plaintiff does not plausibly allege that Defendant Compton's sexual assaults

23    implicated interstate commerce in any way.  The pleadings do not suggest, for

24    example, that Defendant Compton traveled or facilitated the transport of Plaintiff

25    across state lines or national boarders, or that he solicited her from out of state.  *See,*

26    *e.g., United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) ("[S]ex traffic in this case

27    was conducted by advertising across state lines and so affected interstate

28    commerce."); *United States v. Backman*, 817 F.3d 662, 668 (9th Cir. 2016) (finding

1    "[s]ufficient evidence . . . supported the jury's finding of an effect on interstate or

2    foreign commerce" when the "[d]efendant knew that the victim had flown, in foreign

3    commerce, from China to Saipan" and "one of the victim's customers paid for the sex

4    acts by checks drawn on an out-of-state bank").  Nor is it alleged that Defendant

5    Compton initiated or arranged his encounters with Plaintiff using means within the

6    flow of interstate commerce, such as via the internet, telephone, or text messaging.

7    *See, e.g., United States v. Campbell*, 770 F.3d 556, 573–75 (7th Cir. 2014); *United*

8    *States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016); *United States v. Brinson*, 772 F.3d

9    1314, 1325–26 (10th Cir. 2014).

10        Plaintiff argues in opposition that Defendant "Compton's conduct, though

11   occurring in Plumas County, involved the use of multiple instrumentalities of interstate

12   commerce."  (Opp'n Compton Mot. Dismiss at 9.)  Notably, Plaintiff argues that

13   Defendant Compton "utilized the phone system as a pretext to bring N.P. Doe out of

14   her cell to provide her with tobacco, and generally used the telephone system, the

15   Internet, and Facebook to communicate with victims and coerce them into silence."

16   (*Id.*)  However, Plaintiff does not allege Defendant Compton actually used the phone

17   system to solicit sex from Plaintiff; rather, he merely informed her she had a call as a

18   pretext to get her out of her cell.  (FAC ¶ 34.)  Further, Defendant Compton's use of

19   the phone or internet to solicit other victims has no bearing on his use of such

20   instrumentalities to solicit Plaintiff.

21        Plaintiff also argues that "[b]eyond electronic means, Compton's actions also

22   implicated California State Route 70, a regional transportation corridor connecting to

23   U.S. Route 395 and supporting the movement of goods and individuals across state

24   lines."  (Opp'n Compton Mot. Dismiss at 9.)  However, Plaintiff does not actually allege

25   the use of California State Route 70 in her First Amended Complaint, nor does she

26   explain how use of this road, a state route, affects interstate commerce.  Thus, Plaintiff

27   has failed to allege any nexus to interstate commerce sufficient to sustain her sex

28   trafficking claim.

1    Plaintiff has similarly failed to allege she was subjected to forced labor.  Under

2  18 U.S.C. § 1589, forced labor is perpetrated by someone who "knowingly provides or

3  obtains the labor or services of a person" by means which include force, threats,

4  physical restraint, or abuse (or threatened abuse) of law or legal process.  Plaintiff's

5  claim for forced labor here is premised on her allegations that Defendant Compton

6  had " been ordering her to expose herself (akin to stripper work), penetrating her with

7  his fingers through a food slot, coercing her to perform oral sex, repeatedly waking

8  her at night to have intercourse, making her swallow his ejaculation, and taking her to

9  a camera-free cell to assault her, which constitute forced labor . . . ."  (FAC ¶ 167.)  In

10  short, Plaintiff alleges the sexual assaults were forced labor.

11    The sexual assaults allegedly committed by Defendant Compton, egregious as

12  they were, do not constitute forced labor under the TVPA.  While compulsory labor

13  may include forced sexual chores, the courts that have so held contemplated

14  situations wherein the victim was also forced to work for the perpetrators.  *See, e.g.,*

15  *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008) (defendants took in mentally

16  ill victims and forced them to perform uncompensated manual labor around the farm

17  as well sexually explicit acts over at least a decade); *United States v. Udeozor*, 515 F.3d

18  260 (4th Cir. 2008) (victim was forced to live with defendants for four years during

19  which time she was forced to care for their children, clean the house, cook, and work

20  without compensation in the defendant's medical business, and was subject to

21  repeated physical, emotional, and sexual abuse).  Here, by contrast, Plaintiff has

22  alleged numerous incidents of sexual assault but has not alleged she was forced to

23  work for Defendant Compton in any other capacity.  The isolated nature of the

24  assaults distinguishes this case from *Kaufman* and *Udeozor*.

25    Thus, Plaintiff's Ninth and Tenth Causes of Action will be dismissed with leave to

26  amend.

27  ////

28  ////

14

**III.    The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's First through Fourth Causes of Action Under State Law**

Plaintiff's remaining claims for violations of the Bane Act, Sexual Assault/Sexual Battery, Sexual Harassment, and Gender Violence are premised on California law. Because the Court has dismissed all federal claims, albeit with leave to amend, the Court may decline to exercise jurisdiction over Plaintiff's state law claims unless and until a viable federal claim is adequately pled.  28 U.S.C. § 1367(c)(3); *see also Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))).

Accordingly, the Court declines to exercise jurisdiction over Plaintiff First through Fourth Causes of Action and dismisses them without prejudice.

## CONCLUSION

Accordingly, for the reasons set forth above, the County and Defendant Compton's Motions to Dismiss (ECF Nos. 16, 17) will be GRANTED in full.  The Court hereby DISMISSES Plaintiff's Fifth through Tenth Causes of Action with leave to amend, and declines supplemental jurisdiction over the First through Fourth Causes of Action without prejudice.  Plaintiff is granted leave to file an amended complaint within thirty (30) days.

IT IS SO ORDERED.

Dated:   **August 26, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – Plumas.25cv00264.MTD

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28